**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

v.                                                  Case No: 3:89-cr-74-J-32MCR

GREGORY ROBINSON

## **O R D E R**

      Seeking a reduction in his sentence under Amendment 750, Defendant Gregory Robinson filed a Petition for Writ of Audita Qurerla [sic] (Doc. 862), Pro Se Well-Pleaded Complaint to Nullify Judgment (Doc. 874), and Response and Request for Sentence Reduction Pursuant to the Retroactive Amendment to Sentencing Guidelines (Doc. 897). The government filed a response (Doc. 898) and Notice of Supplemental Authority (Doc. 902). The Court heard oral argument on September 23, 2013, and the transcript of that proceeding is incorporated herein. (Doc. 912). Subsequently, the Court asked the parties for additional information regarding the applicability of United States v. Hamilton, 715 F.3d 328 (11th Cir. 2013) to this case. (Doc. 907). Defendant filed a response (Doc. 908), as did the government (Doc. 914). Defendant then filed a new motion for retroactive application of the Guidelines pursuant to Amendment 782 (Doc.

915) and a legal memorandum in support (Doc. 920), and the government responded (Doc. 922).[1]

## I. The Initial Sentencing

In 1989, Robinson was found guilty of conspiring to manufacture, distribute, and possess with the intent to distribute cocaine base (Count I), possession with intent to distribute cocaine base (Count II), possession with intent to distribute cocaine base (Count III), and possession of cocaine with the intent to manufacture cocaine base (Count IV). (Sentencing Tr. at 17).[2] At sentencing, the late Judge John H. Moore II overruled Robinson's objection to his base offense level, adopting the Probation Office's statement that "the offense behavior involved in excess of five hundred grams of cocaine base." (Presentence Investigation Report ¶ 15, as reflected in Doc. 918 at 10); (see also Sentencing Tr. at 15). The 1988 Drug Quantity Table in the Sentencing Guidelines provides for a maximum base offense level of 36 for offenses involving 500 grams or more of cocaine base. U.S.S.G. § 2D1.1 (1988). Using that base offense level, the Court found a total offense level of 44 and a criminal

---

[1] The government filed an unopposed motion for leave to file its response out of time stating that it mistakenly calendared the wrong deadline, and simultaneously filed its response. (Docs. 921, 922). The Court will grant the government's motion and accept its response (Doc. 921) as filed.

[2] Because the sentencing transcript is not part of the electronic docket, it is attached as Exhibit A.

2

history category of III, which provided for a sentence of life imprisonment under the Guidelines. (Sentencing Tr. at 16). Judge Moore imposed concurrent sentences of life imprisonment on Counts I and II, with consecutive sentences of forty years on each of Counts III and IV. (Sentencing Tr. at 23 ("That's eighty years on top of your life sentence.")).

## II. <u>**Robinson's First Motion for a Sentence Reduction**</u>

In 2008, Robinson filed a motion for a sentence reduction under Amendment 706 to the Sentencing Guidelines. (Doc. 793). Amendment 706 changed the required quantities of cocaine base, making a base offense level of 36 require "[a]t least 1.5 KG but less than 4.5 KG of Cocaine Base" and a base offense level of 34 require "[a]t least 500 G but less than 1.5 KG of Cocaine Base." U.S.S.G. § 2D1.1 (2007). Thus, Robinson argued that his base offense level should be reduced to 34. (Doc. 793 at 12). After a hearing, Judge Moore found that the cocaine base amounts in the initial sentencing judgment were sufficient such that Amendment 706 did not alter Robinson's Guideline range. (Doc. 849 at 24). As such, the Court held that it lacked jurisdiction to reduce Robinson's sentence because his Guidelines range under the amended Guidelines would remain the same. (Doc. 833). The Court made an alternative ruling that, even if it had jurisdiction to impose a lesser sentence, it would still give Robinson a life sentence. (Doc. 833). Robinson appealed. (Doc. 835).

On appeal, the Eleventh Circuit held that the finding from Robinson's original sentencing—that his offense conduct involved in excess of 500 grams of cocaine base—bound the Court to a drug weight of "in excess of 500 grams."[3] Robinson, 325 F. App'x at 876. As this quantity would have lowered Robinson's Guidelines range, this Court had jurisdiction to reduce his sentence. Id. While this meant that the Court erred in finding a lack of jurisdiction, the error was harmless because Judge Moore alternatively stated that Robinson would still have received a life sentence. Id. at 877. As such, the Eleventh Circuit affirmed Judge Moore's decision, and Robinson's life sentence remained intact. Id.

### III. Robinson's Second Request for a Sentence Reduction

Robinson now seeks a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 750, (Doc. 897 at 1), and Amendment 782, (Doc.

---

[3] The Eleventh Circuit stated that the district court found that Robinson "was responsible for more than 4.5 kilograms of cocaine base." United States v. Robinson, 325 F. App'x 876, 876 (11th Cir. 2009). However, Judge Moore made no explicit finding related to the drug quantity. (See Docs. 849, 833). At the hearing on the Amendment 706 motion, Judge Moore stated:

> I don't think I can go back and say, well, the probation officer found this and I agreed with it and say, therefore, it's 4.5 kilograms. Nevertheless, even with that, I think there was more cocaine involved just with the sentencing judgment that would cause this amendment not to be effective in this case and that doesn't give me jurisdiction. So I'm going to deny any reduction to this defendant.

(Doc. 849 at 24–25). Based on the 2007 Sentencing Guidelines, Judge Moore only needed to find Robinson responsible for 1.5 kilograms of cocaine base to find him ineligible for a reduction. U.S.S.G. § 2D1.1 (2007).

915). To receive a sentence reduction, Robinson must first demonstrate that he is eligible for a reduced Guidelines range. See 18 U.S.C. § 3582(c)(2).

Courts can reduce a term of imprisonment "[i]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . ." 18 U.S.C. § 3582(c)(2). This relief is only available for amendments, such as Amendment 750 and Amendment 782, which are listed as covered amendments under the Sentencing Guidelines. U.S.S.G. § 1B1.10 (2016).

Robinson's base offense level was 36 under the 1988 Guidelines. (Sentencing Tr. at 15). Under the current Guidelines, the cocaine base weight necessary to reach a base offense level of 36 is 8.4 kilograms. U.S.S.G. § 2D1.1 (2016). Therefore, to be eligible for a sentence reduction, Robinson must be responsible for less than 8.4 kilograms of cocaine base. The parties disagree about how the Court should determine the relevant drug weight.

Robinson points to the law-of-the-case doctrine, arguing that the Eleventh Circuit's earlier holding—that this Court is incapable of revising the drug quantity finding of "in excess of five hundred grams"—applies here and a reduction is warranted. Robinson, 325 F. App'x at 876. An earlier appellate decision is binding on all subsequent proceedings unless the case fits within one of the narrow exceptions to the law-of-the-case doctrine. United States v. Tamayo, 80 F.3d 1514, 1520 (11th Cir. 1996). Those exceptions occur where

5

there is new evidence, where the appellate decision is clearly erroneous and would cause manifest injustice, or where an intervening change in controlling law dictates a different result. Id.; see, e.g., Singleton v. Dep't of Corr., 323 F. App'x 783, 785 (11th Cir. 2009) (applying a subsequent, contrary, published opinion, rather than an unpublished opinion that was the law-of-the-case); United States v. Amedeo, 487 F.3d 823, 830 (11th Cir. 2007) (applying Booker as an intervening change in the law). The law-of-the-case should be followed unless a court is certain that an exception unquestionably applies. Legget v. Badger, 798 F.2d 1387, 1389 n.2 (11th Cir. 1986).

The government argues that the law-of-the-case does not apply because Hamilton represents an intervening change in the law that dictates a different result. (Doc. 914 at 1). Under Hamilton, courts first look to the "drug quantity findings it made, either explicitly or implicitly," at the original sentencing hearing. 715 F.3d at 340. If such "finding is not specific enough to support any conclusion about whether [the applicable] Amendment . . . lower[s] [the defendant's] base offense level,"—i.e. no more specific than "at least 1.5 kilograms"—the court shall examine the entire record before it at the time of the original sentencing to see if it can determine a more specific drug quantity. Id. If, after looking at the entire record, it is still indeterminable whether the drug quantity is such that an Amendment lowers the defendant's Guidelines range, then the defendant is ineligible for relief. Id. at 340–41. The defendant

6

has the burden of demonstrating that he would have received a lower Guidelines range; thus, the sentencing court lacks the authority to reduce a defendant's sentence unless the defendant makes an adequate showing that an Amendment lowers his Guidelines range.[4] Id. at 341; see United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014) ("[T]he defendant, as the § 3582(c)(2) movant, bears the burden of establishing that a retroactive amendment actually lowered his guidelines range in his case." (quotation marks omitted) (alterations adopted) (quoting Hamilton, 715 F.3d at 337)).

If this Court were to follow the law-of-the-case, it would be bound by the initial finding that Robinson was accountable for at least 500 grams of cocaine base, and would be unable to inquire further to determine by how much his responsibility exceeded 500 grams. Robinson, 325 F. App'x at 876. However, Hamilton holds that district courts can no longer rely on ambiguous factual

---

[4] While the Court is bound by the Eleventh Circuit's holding, it notes that there is a circuit split on which party bears the burden of proving the drug quantity attributable to the defendant in § 3582(c)(2) proceedings. Compare United States v. Sprague, 135 F.3d 1301, 1307 (9th Cir. 1998) (holding that once the defendant establishes an Amendment is applicable to his offense, "the burden of proof shifts to the government to establish the base offense level, that is, the weight of the controlled substance."), and United States v. Jenkins, No. 2:08-CR-67-DBH-01, 2015 WL 4496351, at *4 (D. Me. July 23, 2015) (stating that the burden is on the government to prove the drug quantity applicable to the defendant), with United States v. Benson, 715 F.3d 705, 708 (8th Cir. 2013) ("[I]t is not the government's burden—some sixteen years after the case was closed—to prove a substance-by-substance breakdown of the total drug quantity found by the court in 1997 . . . ."), and Hamilton, 715 F.3d at 341.

7

findings regarding drug weight. 715 F.3d at 340–41; see, e.g., United States v. Woods, 573 F. App'x 881, 882 (11th Cir. 2014) (vacating the district court's decision and remanding because it failed to determine a specific drug quantity). The Eleventh Circuit has held that the law-of-the-case doctrine does not preclude a district court from subsequently applying Hamilton. See Green, 764 F.3d at 1357; United States v. Cromartie, 649 F. App'x 965, 969–70 (11th Cir. 2016); United States v. Guyton, 596 F. App'x 873, 877 (11th Cir. 2015). Although each of these cases held that the law-of-the-case did not bar the application of Hamilton in the subsequent § 3852 proceedings, they are distinguishable from Robinson in that the prior rulings never explicitly disallowed the district court from reexamining an indeterminate drug quantity. See Green, 764 F.3d at 1357; Cromartie, 649 F. App'x at 969–70; Guyton, 596 F. App'x at 877. Nonetheless, these cases still hold that district courts are not bound by the law-of-the-case and should follow Hamilton.

In Green, the defendant filed a motion to reduce his sentence pursuant to Amendment 706, which was summarily denied by the district court. On the first appeal, the Eleventh Circuit stated:

> [T]he district court correctly concluded that it lacked authority to reduce Green's sentence. At Green's original sentencing, the district court held Green responsible for more than 1.5 kilograms of cocaine base, which set his base offense level at 38 . . . . After Amendment 706, Green's applicable offense level was lowered by two to 36. Leaving all of Green's other guidelines calculations

8

> intact, his total offense level was lowered to 44, which . . . yields the same guidelines range of life imprisonment.

United States v. Green, 375 F. App'x 944, 945 (11th Cir. 2010) (citations omitted). Green then filed a second motion to reduce his sentence pursuant to Amendment 750. Green, 764 F.3d at 1355. The district court again concluded that Green was ineligible for a sentence reduction, but this time found that Green was responsible for 32.1 kilograms of cocaine base. Id. Green appealed again and the Eleventh Circuit affirmed. Id. In holding that the law-of-the-case did not require the district court to lower Green's base offense level, the Eleventh Circuit stated:

> To be sure, we stated [in the first appeal] that Green's base-offense level "was lowered by two to 36," but our statement, on appellate review, was not a finding of fact. We assumed, for the purposes of that appeal, that the amendment lowered Green's guideline range, as he argued, but we ruled that, even with the lower offense level, Green's guideline range remained unchanged. Our assumption, for the sake of considering Green's argument, that the amendment had lowered his base-offense level did not bind the district court when it considered his second motion for a reduced sentence.

Id. (citations omitted). Additionally, the Eleventh Circuit held in Green that the district court did exactly what Hamilton requires by determining a specific drug quantity attributable to Green. Id. This Court views Green, Cromartie, and Guyton as verifying that Hamilton is a change in the controlling law that the Court is required to apply here.

Robinson further attempts to distinguish Hamilton by stating that the quantity finding in Hamilton was inaccurate and unclear, whereas the quantity finding in Robinson's initial sentencing hearing was clear. (Doc. 908 at 9). In Hamilton, the court sought to determine whether a defendant's offense involved 4.5 kilograms or more of crack cocaine where the initial sentencing hearing only established that the defendant was responsible for "at least 1.5 kilograms of crack cocaine." Hamilton, 715 F.3d at 334. In making its quantity determination at the initial § 3582(c)(2) hearing, the district court relied on a memorandum from probation containing several errors. Id. at 335. Most importantly, the probation report used a 1:1 cocaine powder-to-base conversion ratio. Id. at 335. Given these errors, the district court's order was vacated and remanded for an accurate drug quantity determination. Id. at 340. In so doing, the Eleventh Circuit provided a specific process for the district court to determine drug quantity, to include reviewing all materials available to the sentencing court. Id.

The procedure laid out in Hamilton for determining drug quantity on remand was not limited to cases involving errors in probation memoranda. See id. at 340–41; see also Green, 764 F.3d at 1355. Indeed, it would not make sense for district courts to have one standard for drug quantity findings in § 3582(c)(2) proceedings, and an entirely different standard on remand if they relied on an erroneous probation memorandum in their initial ruling. Thus, despite

10

Robinson's argument to the contrary, Hamilton is not limited to its facts. Instead, Hamilton and this case similarly involve an inexact sentencing finding of "at least" or "in excess of" a certain drug quantity. Hamilton establishes new law governing how courts should make drug quantity determinations in these situations. 715 F.3d at 340. As such, Hamilton controls this Court's determination of Robinson's drug weight.[5]

### IV. Applying *Hamilton*

A district court lacks jurisdiction to alter a defendant's sentence unless the amendment has the effect of reducing the defendant's applicable guidelines range. Hamilton, 715 F.3d at 337. "In determining the amended guidelines range, the district court may not reconsider other guideline application

---

[5] In arguing that Hamilton is inapplicable, Robinson also cites to a number of district court cases predating Hamilton. (Doc. 908 at 10-11). In those cases, the defendants were found accountable for at least the threshold amount of drug weight necessary for a base offense level, but the sentencing courts did not find a specific quantity above that threshold. See, e.g., United States v. Cooper, No. 8:98-cr-228-T-26EAJ, Doc. 1319 (M.D. Fla. Aug. 8, 2008) (finding that the initial sentencing hearing found the defendant accountable for more than 1.5 kilograms of crack, without any specific finding of how much more than 1.5 kilograms). These cases held that the courts were required to use the threshold amount found at sentencing in determining eligibility for a later sentence reduction. See, e.g., id. (using 1.5 kilograms as the drug weight despite the government's argument that the defendant was accountable for more than 4.5 kilograms of crack). However, Hamilton established a new standard, and Robinson's failure to cite a single binding, post-Hamilton case strengthens the government's assertion that Hamilton instituted a new rule. Thus, the Court will apply it here.

decisions . . . ." Id. (quotation marks omitted) (quoting United States v. Cothran, 106 F.3d 1560, 1562–63 (11th Cir. 1997)). The minimum quantity of cocaine base required for a base offense level of 36 under the 2016 Guidelines is 8.4 kilograms; thus, to qualify for a reduction, Robinson needs to show that the cocaine base attributable to him is less than 8.4 kilograms. See 18 U.S.C. § 3582(c)(2); U.S.S.G. § 2D1.1 (2016); Hamilton, 715 F.3d at 341.

At the original sentencing hearing, Judge Moore found that the Probation Office correctly calculated a base offense level of 36. (Sentencing Tr. at 15). Additionally, Judge Moore overruled Robinson's objections to the PSR and adopted its factual statements as the Court's findings. (Sentencing Tr. at 13–16). The only explicit drug quantity finding related to cocaine base was contained in paragraph 15, which states: "[b]ecause the offense behavior involved in excess of five-hundred grams of cocaine base, the base offense level is thirty-six." (Doc. 918 at 10, ¶ 15). Paragraphs six through nine of the PSR provide a factual background of the offense, but do not state explicit quantities of cocaine base. However, they do state: "Robinson purchased powdered cocaine in the Miami, Florida area, usually in kilogram quantities. . . . A witness, Caroline 'Kelly' Taylor testified that she . . . knew of at least 20.5 kilograms of cocaine that was transported from Miami." (Doc. 978 at 9, ¶ 6). The PSR goes on to state: "After the powdered cocaine was delivered to . . . Jacksonville,

Gregory Robinson or his managers cooked the substance into cocaine base . . . ." (Doc. 918 at 9, ¶ 7).

Because the finding at the sentencing hearing was no more specific than "at least" 500 grams, the Court shall review the entire record to attempt to determine a specific drug quantity attributable to Robinson.[6] Hamilton, 715 F.3d at 340–41. Judge Moore adopted as fact that Taylor knew of at least 20.5 kilograms of cocaine powder that was shipped from Miami to Jacksonville, and once in Jacksonville the cocaine powder was cooked into cocaine base. (See Sentencing Tr. at 13; Doc. 918 at 9, ¶¶ 6–7). This evidence is supported by the trial testimony.[7] (Trial Tr., Vol. 2 at 79–92, 102–03; Vol. 3 at 51, 260; Vol. 4 at

---

[6] At the September 23, 2013 hearing, (Doc. 912 at 29), the government provided the Court with a binder containing trial transcript excerpts of testimony relevant to drug quantities attributable to Robinson. The trial transcript excerpts that the government provided to the Court are attached as Exhibit B. Robinson's counsel objected to the excerpts. In response, the Court gave Robinson the opportunity to provide excerpts or citations to the record demonstrating Robinson was responsible for a drug quantity that would lower his base offense level. (Doc. 912 at 29). Upon Robinson's request, (Doc. 906), the Court extended this deadline by two months, (Doc. 907). Despite the Court's direction and that Robinson has the burden of demonstrating the Amendment applies to him, Hamilton, 715 F.3d at 341, Robinson failed to provide any transcripts or point to any record evidence indicating he was responsible for a lesser amount of cocaine base. Instead, he simply attempted to diminish the government's evidence.

[7] There was testimony indicating that Robinson was responsible for much higher amounts of cocaine, as well as cocaine base. (Trial Tr., Vol. 4 at 212–16; Vol. 6 at 158–62; Vol. 7 at 228–31; Vol. 9 32–33, 37; Vol. 10 at 118, 136; Vol. 13 at 56–57, 142, 328). However, the Court will only use the 20.5 kilograms of cocaine powder because it is unclear whether the cocaine base that was found

212–13; Vol. 7 at 231). During trial, Agent Permaul testified that, based on a conversation between Robinson and one of his codefendants, Robinson was angry that cocaine powder he had received was only seventy-eight percent pure. (Trial Tr. Vol. 10 p. 135). Using seventy-eight percent as a conservative baseline,[8] Robinson would be responsible for 15.99 kilograms (20.5 KG x 78%) of cocaine base. See, e.g., Singleton, 545 F.3d at 934 ("A district court is required to determine, based upon some evidence, the amount of crack cocaine that would be produced from the amount of powder cocaine involved, and to use that figure in calculating a defendant's sentence under the crack cocaine schedule."); United States v. Booker, 334 F.3d 406, 414 (5th Cir. 2003) ("Conversion of powder cocaine to crack cocaine for sentencing purposes is permissible if such conversion was foreseeable to the defendant.").[9] The 15.99

---

came from that cocaine powder. Although given the scale of Robinson's operation, this is unlikely, the Court will maintain a conservative estimate.

[8] The Sentencing Commission estimates that "under 'ideal conditions,' one gram of powder produces .89 grams of crack cocaine." Hamilton, 715 F.3d at 333 n.1 (citing U.S. Sentencing Commission, Report to the Congress: Cocaine and Federal Sentencing Policy 63 (2007)).

[9] Robinson's conspiracy involved cocaine powder and cocaine base; Counts I, II, and III were cocaine base offenses and Count IV charged him with possessing cocaine powder with the intent to manufacture cocaine base. At Robinson's original sentencing, Judge Moore only used cocaine base in determining Robinson's base offense level. In similar cases, courts have converted cocaine powder into cocaine base relying on a conversion ratio derived from the evidence. E.g., United States v. Singleton, 545 F.3d 932, 934 (11th Cir. 2008). However, the Guidelines also provide a drug equivalency table for combining different controlled substances to reach a single drug quantity for

kilograms attributable to Robinson far exceeds the minimum 8.4 kilograms necessary for a base offense level of 36. Accordingly, Robinson has failed to carry his burden to show that he would have received a lower guidelines range and is therefore ineligible for a sentence reduction.[10]

V.  **Conclusion**

The Court understands that the sentencing regime has changed substantially since Robinson received his life plus eighty years sentence in 1990. However, the original sentencing judge declined to reduce the sentence in 2008 and the undersigned, as the successor judge, finds no legal authority to do

---

determining a base offense level. U.S.S.G. § 2D1.1 cmt. n.8(B). Under the current Guidelines, the different substances are converted to marihuana, and the marihuana amount is used to determine the base offense level. Id. Using this method, 500 grams of cocaine base and 20.5 kilograms of cocaine equal 5,885.5 kilograms of marihuana. U.S.S.G. § 2D1.1(c), cmt. n.8(D). Thus, Robinson's base offense level would be 32, and he would be eligible for a reduction. However, Robinson did not raise this possibility and the Court found no cases explaining why it should use the drug equivalency table as opposed to converting the cocaine powder to cocaine base. As the original sentencing contemplated only cocaine base and there are numerous questions about which drug equivalency table would be used (for example using the 1988 drug equivalency table would yield a base offense level of 34, and it converts drugs to their cocaine or heroin equivalents), the Court found no basis to alter Judge Moore's original application decision. Dillon v. United States, 560 U.S. 817, 827 (2010) (stating that in § 3582(c)(2) proceedings, courts determine the amended Guidelines range that would have applied if the amendment were in effect at the time of the initial sentencing, but leave all other Guidelines application decisions undisturbed); see Singleton, 545 F.3d at 934.

[10] As the Court does not have the authority to reduce Robinson's life sentence under Counts I and II, it declines to address Robinson's argument that Counts III and IV should run concurrently as opposed to consecutively.

so. Nevertheless, if the Eleventh Circuit finds that the Court is bound by the law-of-the-case or has otherwise erred, I will, of course, revisit Robinson's sentence.

Accordingly, it is hereby

**ORDERED:**

1. Defendant's Petition for Writ of Audita Qurerla [sic] (Doc. 862) and Pro Se Well-Pleaded Complaint to Nullify Judgment (Doc. 874) are **DENIED**.

2. Defendant's Motion for Retroactive Application of Amendment 782 (Doc. 915) is **DENIED**.

**DONE AND ORDERED** in Jacksonville, Florida this 10th day of September, 2018.

TIMOTHY J. CORRIGAN
United States District Judge

w./ab./jb.
Copies:

Counsel of Record
Defendant